UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 3:09-cr-00150 |
| ) | Judge Campbell/Brown |
| ) | |
| DENNIS J. RODRIGUEZ ) | |
| ) | |
| Defendant ) | |

**O R D E R**

The Defendant in this matter filed a motion on March 6, 2010, requesting that the Court order the United States Marshal to transfer the Defendant to a facility other than Robertson County Detention Facility (RCDF) during the pendency of this case (Docket Entry 149). The Plaintiff responded by stating, "The United States takes no position on whether the Defendant Dennis Rodriguez should be transferred to another facility or remain in the Robertson County jail." (Docket Entry 157). Chief Judge Campbell then referred the matter to a Magistrate Judge for a decision. After Magistrate Judge Griffin recused herself, the matter was transferred to the undersigned and a hearing was held in this matter on April 6, 2010.

For the reasons stated below, the motion to transfer is **DENIED**.[1]

As an initial matter, the Magistrate Judge was concerned by the United States' response that they took no position in this

---

[1] The Defendant, of course, at any time remains free to file a 42 U.S.C. § 1983 and/or a Bivens civil action if he believes his Constitutional rights have been violated.

matter. The Assistant United States Attorney who was present advised that that decision had been made by the United States Attorney and that as a matter of policy they would not take a position on motions such as this. I requested that a supervisor appear and give some further explanation of this position. The United States Attorney, Mr. Yarbrough, appeared. He stated that since the Court had held in the case of *United States of America v. Williams*, 2009 WL 4824940 (M.D. TN Oct. 26, 2009), that the Court had the authority to transfer pretrial inmates because of jail conditions, the United States Attorney felt that it would be a conflict of interest for the United States to take a position on motions such as this because it might be seen as a form of coercion of a pretrial inmate to induce a plea. He further advised that the matter had been discussed with the United States Marshal Service and that the United States Marshal Service had their own attorneys who could appear. He reiterated that the United States would not take a position in this matter.

Quite frankly, the undersigned is dumbfounded by this position. A pretrial defendant denied bond is ordered into the custody of the Attorney General pending trial (Docket Entry 73). See 18 U.S.C. 3142(i)(2). If there are allegations that the conditions of pretrial confinement violate Constitutional standards, it appears incumbent on the United States Attorney, as legal representative of the Attorney General, and as the legal representative of the United States, to take a position on the matter. The United States Attorney in negotiating pleas, regularly agrees to dismiss charges and recommends particular matters that

will affect the sentencing guidelines.  At the start of a case the United States Attorney may well discuss with a defendant or his attorney whether to allow surrender and agree to recommend release on bond.  To argue that taking a position on the conditions of pretrial confinement is somehow coercive is simply an untenable position.  *North Carolina v. Alford*, 400 U.S. 25 (1976) and *Bordenkinder v. Haynes*, 434 U.S. 357 (1978).  To paraphrase one of Judge Higgins' comments, it appears that the United States Attorney has retreated from this field of battle at the first sound of musketry.

To the Magistrate Judge's understanding, the United States Marshal's Service does not have independent litigating authority.  This position leaves the United States Marshal's Service and the United States without a ready means of presenting the other side of the story to the extent there is one.

A Defendant is committed to the custody of the Attorney General and it should be a rare case, such as *Williams,* that the Court need become involved in the actual placement of inmates.  Placement is a function committed by the Attorney General to the United States Marshal's Service or the Bureau of Prisons, who are, in most cases, best able to determine where inmates should be housed, given the availability of beds, the necessity for separating certain inmates from others, and a number of a day-to-day practical considerations.

That is why it is particularly disturbing to this Magistrate Judge that the United States Attorney in effect leaves the United States Marshal hung out to dry and puts the entire

3

burden on the Court to try to determine whether a motion has merit or not. With all due respect, the Magistrate Judge believes this is an abdication of the United States Attorney's duties.

The evidentiary portion of the hearing may be summarized as follows. In this case the Magistrate Judge allowed Deputy Marshal Dill to testify the certain facts within his knowledge.

The Defendant Rodriguez introduced as collective exhibits the documents attached to his motion Docket Entries 149-1 and 149-2. He testified that he was arrested on July 1, 2009, and went into Robertson County on July 2, 2009. He stated that at the time he was incarcerated he weighed approximately 240 pounds and that he was 5'10" tall (72 inches). He said that he was not weighed at RCDF for approximately 10 days and that when he was weighed he weighed 232 pounds. He stated that he had filed a number of grievances about the conditions of RCDF, particularly the food. He said the food conditions improved in December, but dropped off again until recently when he complained about his weight loss and the doctor ordered that he be given double portions, which he is presently receiving. He stated that the breakfasts normally consisted of grits, biscuits, a sausage patty and eight ounces of juice; that lunch would generally be some type of hamburger or turkey slice, rice, beans, biscuits and juice; that dinner would again have small portions of some type of meat, vegetables, and tea. He stated that there was no water as such served with a meal and that soda was not available. He pointed out that there is no commissary so the prisoners have no ability to buy any food or personal items. He said that the food was served in extremely

4

small portions and that it was only in the last two weeks that he has been given double portions and his weight loss has stabilized. He also stated that the food was unappetizing and almost inedible.

He stated that requests for sick call could only be turned in on Sunday, Tuesday and Thursday. He was in a four-person cell that was approximately 13' x 13'. At the present time there were only three inmates in the cell. He stated that the inmates were never given time outside the jail unless they were going to court or some other outside appointment. The prisoners were allowed out of their cells for rotating periods of time from 7:00 a.m. to 11:30 a.m. on one day and the next day they would be allowed out from 4:00 p.m. to 9:00 p.m. He stated there was very little exercise they could do, particularly since they were never allowed outdoors. He was worried about his health and had been dizzy at times. He stated that hygiene conditions were poor, that he needed lotions for dryness, and for other skin conditions he had. He stated that they were not provided deodorant and the result was that the inmates had poor hygiene and stunk. He said that at times they did receive a half slice of an orange or an apple for the day. Although conditions were better now that he was on double portions he still remains hungry.

The Assistant United States Attorney asked no questions. In response to a question from the Court, he said he had not filed a specific grievance about his weight loss with the jail or the Marshal.

United States Marshal Dill stated that the jail was inspected by the Marshal's Service yearly and that the last

5

inspection was either in June or July of 2009. He stated that he had eaten lunch at the jail twice. Both times he and the inmates were given two sandwiches--one, as he recalls was some type of bologna and the other some type of peanut butter along with chips and a cookie. He stated he understood that inmates were now provided a hot meal at lunch, rather than sandwiches.

Marshal Dill said that the Marshal Service had approximately 350 individuals in custody and that they were scattered at several different institutions. RCDF was one of the few institutions that had adequate space and would readily accept federal prisoners. When asked by the Court what were the requirements for outdoor activities, he stated the present regulations did not require outdoor exercise or activities for pretrial detainees, although once an individual was sentenced, outdoor activities were required. He explained that he believed the reason for this was that traditionally the pretrial detainees were considered short-term confinees, whereas sentenced prisoners were subject to longer terms.[2] Marshall Dill testified that to his knowledge the inmates could submit sick call slips at any time. Medical expenses outside the normal jail health service provided by the jail, such as eye examinations and glasses could be requested. He stated the local United States Marshal did not have expertise in

---

[2]A concern with this policy is that it treats individuals who are in pretrial confinement and still under a presumption of innocence worse than inmates who are convicted. There are numerous cases where pretrial confinement can be longer than an actual sentence of confinement. Marshal Dill said the RCDF was in the process of renovating the old part of the jail and should have outdoor areas for the inmates later in the spring.

6

this area, therefore he approved all such requests received from the jail.

Defendant's counsel admitted that since the *Williams* case counsel have often filed motions such as this rather than initially taking the matter up with either the jail or the United States Marshal[3]. Marshal Dill stated that the Marshal Service would much prefer that complaints initially be sent to the Marshal Service so they will have an opportunity to address them. He pointed out that after he received knowledge of the motion in this case he contacted the jail and it was then the medical staff saw the defendant about his weight loss and started double rations.

The Magistrate Judge carefully reviewed Docket Entry 149-1. As an initial matter, the Magistrate Judge would note that a number of sick slips submitted by the Defendant were submitted on days other than Sunday, Tuesday, and Thursday. *See* Docket Entry 149-1, pages 9,11,25,27, and 34. The records show that he was admitted to the RCDF on July 2, 2009. There is no indication in the records submitted by the Defendant that he was weighed until July 17, 2009, when his weight was reflected (at page 36) as being 232.

---

[3]It is this Magistrate Judge's view that prior to bringing motions of this type defense counsel would be better served to follow in spirit the requirements of the Prison Litigation Reform Act and exhaust administrative remedies by making their grievances known to the local jail facility and/or the United States Marshal's Service. The local jail officials and the Marshal's Service are in the best position to initially evaluate these complaints. The United States Attorney would then have a basis to take appropriate action on motions such as this by individuals committed to the custody of the Attorney General.

7

From the records it appears that the Defendant submitted approximately 17 sick slips from July 16, 2009, through March 6, 2010. Not all of his medical notes reflect weight; however, going in chronological order it appears that he next weighed 223 on August 21; 219 on September 2; 217 on September 22; 211 on October 22; 206 on November 9; 198 on December 17; 200 on January 1, 2010; and 193 on February 10. The Defendant in his testimony stated that he presently weighed 192.

The Magistrate Judge did not find any indication in the records that the Defendant specifically complained about weight loss or food, and no copies of grievances were provided to the Court. The Defendant's most persistent complaint was that he had migraine headaches and blurred vision. In some of the reports, he indicated that he had these problems for a year or so and in others he indicated that the blurred vision and headaches were only a few months old. It appears that he was treated with various medications, including Ibuprofen and Tylenol. On August 21, 2009, the RCDF requested the Marshal to approve an eye examination and glasses. The Marshal approved the request on August 24, and the Defendant had his eyes examined on August 31, was prescribed glasses, and it appears the glasses were picked up on or about September 23, 2009. After that there are no further complaints about headaches or blurred vision.

The Defendant had a number of complaints about dry skin, dandruff, and various foot fungi, as well as complaints about an upper respiratory infections, and in one case a slight amount of blood in the urine. He also suffered a sore wrist from striking it

8

on a shelf. He testified that he did not receive an x-ray for the wrist, however, the medical notes for the examination on October 23, page 21, show that at the time of the examination he was not complaining of pain when the wrist was moved and stated that he was able to do push ups without pain. He stated that the problem with the knot on his wrist was resolved within two weeks.

From a review of the records it appears the Defendant did sustain a significant weight loss from July to February of somewhere between 45 and 50 pounds. It does not appear from the records that the jail personnel monitored or took any action on the weight loss until the Defendant filed his motion seeking transfer. The Defendant was then specifically asked about weight loss during a meeting with the medical staff. He was put on double rations.

The Magistrate Judge would note that using the United States Army weight standards, that an individual 21 to 27 years old, with a height of 70", has a recommended minimum weight of 132 pounds and a maximum recommended weight of 185 pounds. http://usmilitary.about.com/od/army/1/blmaleweight.htm.

Thus, even at the present time, the Defendant is above recommended weight for soldiers of his height and age.

Nevertheless, as Chief Judge Campbell pointed out in the *Williams* case, weight loss is not a penalogical goal. However, the fact that the Defendant's weight is still above some recommended guidelines does indicate to the Magistrate Judge that the weight loss in this matter does not reach the level of a Constitutional violation, particularly in view of the fact that he is now receiving additional food and his weight has apparently stabilized.

9

In a review of the record it appears to the Magistrate Judge that the Defendant has been able to submit sick call requests on numerous occasions and that they have not been limited to Sunday, Tuesday, or Thursday. It also appears that for the sick requests he made, he received screening within a relatively short period of time by the medical staff. The fact that the Defendant has not received everything that he sought, again, does not appear from a review to violate Constitutional minimal standards. The records do show that he has been prescribed a number of medications and has received glasses.

After careful consideration of the evidence, the Magistrate Judge believes that the defendant has failed to establish conditions which would justify the Court granting the relief sought.

It is so **ORDERED**.

/S/ Joe B. Brown

JOE B. BROWN
United States Magistrate Judge